UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LIDUVINA RIVERA ACOSTA, as the heir and representative of the Estate of JOSE G. RIVERA, | ) ) ) ) | NO. CV 05-6275-CT |
| Plaintiff, | ) ) | OPINION AND ORDER |
| v. | ) ) | |
| JO ANNE B. BARNHART, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) ) | |

For the reasons set forth below, the opinion of the Commissioner of Social Security is REVERSED because it not supported by substantial evidence and the matter is REMANDED to the Commissioner for an award of benefits consistent with this memorandum and order.

SUMMARY OF PROCEEDINGS

On August 6, 2004, Jose G. Rivera passed away as a result of amyloidosis after seeking benefits under the Social Security Act ("the Act"). (TR 167). On December 14, 2005, plaintiff, Liduvina Rivera Acosta ("plaintiff"), as the heir and representative to the estate of Jose G. Rivera, filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Act. The parties filed

a consent to proceed before the magistrate judge.  On December 14, 2005, plaintiff filed a brief in support of the complaint.   On January 9, 2006, the parties filed a joint stipulation that plaintiff is the surviving spouse of Mr. Rivera and that she is Mr. Rivera's heir and a proper representative of his estate, and is entitled to prosecute this action challenging the Commissioner's denial of benefits.   On February 13, 2006, the Commissioner filed a brief in opposition to the relief requested in the complaint.

SUMMARY OF ADMINISTRATIVE RECORD

1.  Proceedings

On August 8, 2002, Mr. Rivera filed an application for disability insurance benefits, alleging disability since March 3, 2002 due to lung and leg problems.   (TR 45-47, 65-74).[1]   The application was denied initially and upon reconsideration.  (TR 31).

On January 3, 2003, Mr. Rivera filed a request for a hearing before an administrative law judge ("ALJ").  (TR 35-36).  On September 24, 2003, Mr. Rivera, represented by an attorney and accompanied by an interpreter, appeared and testified before an ALJ.  (TR 221-52).  The ALJ also considered vocational expert testimony.  At the hearing, the ALJ indicated that he felt that he would "probably" find that Mr. Rivera was entitled to benefits.  (TR 251-52).   Nonetheless, on October 31, 2003, the ALJ issued a decision that Mr. Rivera was not disabled, as defined by the Act, because he could perform a limited range of light work and there are a significant number of jobs in the national economy

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

that Mr. Rivera could perform.  (TR 18-27).  On December 27, 2003, Mr. Rivera filed a request with the Social Security Appeals Council to review the ALJ's decision.  (TR 10).  The Appeals Council received additional medical records and Mr. Rivera's death certificate.[2]  (TR 8). Nonetheless, on June 23, 2005, the Appeals Council denied the request to review the ALJ's decision.  (TR 5-7).  Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

Plaintiff subsequently sought judicial review in this court. Plaintiff is now seeking benefits for the period beginning March 3, 2002.

2.  Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and, except as otherwise noted, materially summarizes the evidence in the case.

THE PARTIES' CONTENTIONS

Plaintiff contends that the Commissioner erred in two respects: (1) the Commissioner's decision that Mr. Rivera could perform the alternate job identified by the vocational expert is inconsistent with the classifications of the Dictionary of Occupational Titles, and (2) the Commissioner failed to articulate clear and convincing reasons for rejecting Mr. Rivera's testimony.

The Commissioner agrees with plaintiff's assignment of error on these issues.

The sole issue in contention is whether, as plaintiff urges, this

---

[2]These medical records submitted to the Appeals Council are now part of the administrative record before this court, which the court can consider. See Ramirez v. Shalala, 8 F.3d 1149, 1451-52 (9th Cir. 1993)(considering both the evidence before the ALJ and evidence submitted to the Appeals Council).

1  court should reverse with directions to award benefits or, as the

2  Commissioner urges, the court should simply remand the matter for

3  further proceedings.

STANDARD OF REVIEW

5  Under 42 U.S.C. §405(g), this court reviews the Commissioner's

6  decision to determine if: (1) the Commissioner's findings are supported

7  by substantial evidence; and, (2) the Commissioner used proper legal

8  standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

9  Substantial evidence means "more than a mere scintilla," Richardson v.

10  Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

11  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

12  When the evidence can reasonably support either affirming or

13  reversing the Commissioner's conclusion, however, the Court may not

14  substitute its judgment for that of the Commissioner.  Flaten v.

15  Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.

16  1995).  The court has the authority to affirm, modify, or reverse the

17  Commissioner's decision "with or without remanding the cause for

18  rehearing." 42 U.S.C. §405(g).  Remand is appropriate where additional

19  proceedings would remedy defects in the Commissioner's decision.

20  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

DISCUSSION

22  1.  The Sequential Evaluation

23  A person is "disabled" for the purpose of receiving social security

24  benefits if he or she is unable to "engage in any substantial gainful

25  activity by reason of any medically determinable physical or mental

26  impairment which can be expected to result in death or which has lasted

27  or can be expected to last for a continuous period of not less than 12

28

4

months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2.   Reversal or Remand

Plaintiff contends that due to his inability to speak English, Mr. Rivera could have not performed the Dictionary of Occupational Titles ("DOT") Cashier II job (DOT No. 211.462-010) identified by the

vocational expert, which requires a language ability level of 2.[3]   In addition, plaintiff contends that the ALJ erred in rejecting Mr. Rivera's testimony.   Plaintiff asserts that, based on Mr. Rivera's testimony and the medical evidence, Mr. Rivera could not work. Accordingly, plaintiff argues that the court should reverse with directions to award benefits.

The Commissioner, on the other hand, argues that the record is incomplete and the court should remand with directions to re-evaluate Mr. Rivera's credibility and explain the conflict between the Dictionary of Occupational Titles and the vocational expert's testimony.

Where, as here, the Commissioner's decision is not supported by substantial evidence, the court must decide whether to remand the matter for rehearing or to reverse and order benefits granted.   The court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g) (2002); See Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).

The decision whether to remand a case for additional evidence is within the discretion of the court.  Sprague v. Bowen, 812 F.2d at 1232. Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  See also Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (stating that remand

---

[3]Language Level 2 requires, among other things, that the person have a passive vocabulary of 5,000-6,000 words and read at a rate of 190-125 words per minute.  DOT, Appendix C.  For example, a person at this language level could read adventure stories and comic books, looking up unfamiliar words in the dictionary for meaning, spelling and punctuation.  Id.  The ALJ found that Mr. Rivera could not communicate in English.  (TR 27).  Mr. Rivera testified that he could not read English.  (TR 225).

for further administrative proceedings is appropriate if enhancement of the record would be useful).  "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996); Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1988)).  Thus, where a rehearing would simply delay receipt of benefits because the record is fully developed and there is substantial evidence of disability, reversal rather than remand is appropriate.  Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Here, as the Commissioner concedes, the ALJ rejected Mr. Rivera's testimony concerning his limitations due to his physical impairments without providing legally sufficient reasons for doing so.  "[T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence, (2) there are not outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find plaintiff disabled were such evidence credited."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

If Mr. Rivera's testimony and statements concerning his symptoms and limitations are credited, he was disabled during the relevant period.  Mr. Rivera testified that he was very limited in his daily

7

activities as a result of his ailments, which included severe lung
damage due to long-term bronchiectasis, amyloidosis, renal failure, and
swelling of his feet.[4]  He performed some very light chores around the
house, but had to do so very slowly because he tired easily.  (TR 226).
He could not perform any vigorous chores like vacuuming without
coughing.  (Id.)  Even that mild amount of activity exhausted him enough
that he took naps five hours a day and sometimes even more.  (Id.)  He
could walk for only ten minutes at a time and could barely walk his
children two blocks to school.  (Id.)  Further, his history of medical
treatments demonstrates that he would have had repeated absences at any
job due to his ailments and the need for medical treatment, including
hospitalization.  He was hospitalized in April 2002 for over two weeks
(TR 119-20), was seen at the hospital again in August 2003 (TR 163-64),
was hospitalized in December 2003 after nausea and vomiting for 20 days
(TR 190), was in intensive care on May 7, 2004 (TR 178), and passed away
on August 6, 2004.[5]  (TR 167).

The ALJ took many of Mr. Rivera's limitations into account when
assessing his residual functional capacity, which the ALJ determined to
be a limited range of light work.  (TR 26-27).  With the limitations
given by the ALJ, the vocational expert was only able to identify one

[4]Bronchiectasis is a condition marked by chronic abnormal dilation of
bronchi and destruction of bronchial walls.  Lippincott Williams & Wilkins, A
Professional Guide to Diseases (8th ed. 2005) at 559.  Symptoms include
frequent bouts of pneumonia and a chronic productive cough.  Id.  Amyloidosis
is a rare, chronic disease resulting in accumulation of amyloid, which
infiltrates body organs and soft tissues.  Id. at 902.  Amyloidosis sometimes
results in permanent, usually life-threatening, organ damage.  Id.  Amyloidosis
can be caused by chronic infection or tuberculosis.  Id. at 903.

[5] On Mr. Rivera's discharge from the hospital in April 2002, it was
noted that he was disabled for three months.  (TR 120).  His treating
physician also noted in his records from September and October of 2002 that
Mr. Rivera's disability was extended.  (TR 217, 220).

1  job that Mr. Rivera could perform, Cashier II (DOT No. 211.462-010).

2  (TR 246).  Further, the vocational expert testified that the numbers of

3  Cashier II jobs available to Mr. Rivera were significantly eroded due to

4  Mr. Rivera's environmental limitations (due to his lung problems) and

5  his limitations on standing.  (Id.)

6      The ALJ did **not** include in the limitations provided to the

7  vocational expert Mr. Rivera's extensive need to rest and nap during the

8  day.  Napping five hours a day is not compatible with even sedentary

9  level work, which requires a person to be able to work an eight hour

10  day.  See Smolen v. Chater, 80 F.3d 1273, (9th Cir. 1996)(reversing and

11  remanding for a determination of benefits because plaintiff's fatigue

12  prevented her from working on a full-time basis throughout the relevant

13  time period); see also Social Security Ruling 96-8p ("ordinarily RFC is

14  an assessment of an individual's ability to do sustained work-related

15  physical and mental activities in a work setting on a regular and

16  continuing basis.  A 'regular and continuing basis' means 8 hours a day,

17  for 5 days a week, or an equivalent work schedule").[6]  Accordingly, when

18  Mr. Rivera's testimony is fully credited, Mr. Rivera was unable to work.[7]

19

20      [6] Social Security Rulings do not have the force of law.  Paxton v.
    Secretary of Health & Human Servs., 856 F.2d 1352, 1356 (9th Cir. 1988).

21  Nevertheless, Social Security Rulings constitute the Social Security
    Administration's interpretation of the statute it administers and of its own

22  regulations, and they are binding on ALJs.  Quang Van Han v. Bowen, 882 F.2d
    1453, 1457 n.6 (9th Cir. 1989) (citing Paulson v. Bowen, 836 F.2d 1249, 1252
    n.2 (9th Cir. 1988)).  Courts in the Ninth Circuit defer to Social Security

23  Rulings unless they are plainly erroneous or inconsistent with the Act or
    regulations.  See Chavez v. Department of Health and Human Services, 103 F.3d

24  849, 851 (9th Cir. 1996).

25      [7] Plaintiff contends that Mr. Rivera could, at most perform unskilled,
    sedentary work and, therefore, was disabled under Rule 201.17 of the Medical

26  Vocational Guidelines.  20 C.F.R., Part 404, Sbpt. P, App. 2 § 201.17.  The VE
    testified that if Mr. Rivera was limited to only sedentary work, given his

27  environmental and language limitations, there would be no jobs in the local
    economy that Mr. Rivera could have performed.  (TR 245).  However, based on

28                                         9

1    Further, Mr. Rivera testified that he could only "write" a letter
2    in English if he was looking at the letter.  (TR 225).  In other words,
3    he testified that he was able to copy English letters and words, but not
4    truly write in English and he could not read in English.  (Id.)  The
5    vocational expert testified that if Mr. Rivera could not write in
6    English, he could not perform the identified jobs.  (TR 247).

7    Thus, when Mr. Rivera's testimony is fully credited, it is clear
8    that the ALJ should have found Mr. Rivera disabled.  Benecke v.
9    Barnhart, 379 F.3d at 593.  There are no outstanding issues that must be
10   determined before a determination of disability can be made.  Id.
11   Indeed, Mr. Rivera could not appear at a future hearing and further
12   clarify any issues because he is deceased.  Moreover, there is no need
13   to remand to have the vocational expert explain the conflict between his
14   testimony that Mr. Rivera could perform the Cashier II job and the DOT
15   language requirements for that job.  Regardless of his language ability,
16   Mr. Rivera, a dying man, did not have the stamina to work the Cashier II
17   or any other full-time job.[8]  Accordingly, the Commissioner's decision
18   should be reversed and the matter should be remanded to the Commissioner

19
20   Mr. Rivera's need to rest and nap during the day, he was not able to perform a
     full-time job, regardless of whether he could perform light or only sedentary
     work.
21
22   [8]The consultative examiner who examined Mr. Rivera on October 9, 2002,
     found that Mr. Rivera could walk, stand and sit for six hours in an 8 hour day
     with appropriate breaks and could lift and carry fifty pounds occasionally and
23   twenty pounds frequently.  (TR 136).  However, the consultative examiner's
     testing of Mr. Rivera's lung function showed "severe restrictive lung
     disease."  (TR 137).  The state agency physician essentially agreed with the
24   findings of the consultative examiner.  (TR 144-51).  Nonetheless, the ALJ
     found that Mr. Rivera's functional capacity was much more limited.  In
25   addition, the consultative examiner's analysis was based only on his own
     physical examination performed on that day and his observations on that day.
26   (TR 136).  Neither the consultative examiner nor the state agency physician
     had the benefit of Mr. Rivera's subsequent records which showed that Mr.
27   Rivera was apparently much more seriously ill than was previously understood.
     (See TR 167, 171-97).
28
                                        10

to award benefits.

CONCLUSION

    Accordingly, it is ordered that Commissioner's opinion denying benefits to plaintiff is REVERSED and the matter is REMANDED to the Commissioner for an award of benefits consistent with this memorandum and order.


DATED: February 14, 2006

                          / S /
                          CAROLYN TURCHIN
                          UNITED STATES MAGISTRATE JUDGE

11